Good morning, and please the court. I'm Sonam Henderson from the Office of the Federal Public Defender. I'm here on behalf of Appellant James Thurman Tanner. I'd like to reserve four minutes for rebuttal, and I'm planning to focus my arguments on count three, which is the receipt count, but of course I'm happy to answer any questions anyone has about anything else. So this case raises the question whether a person can be convicted of criminal receipt of child pornography based on an email found in a third party's sent box, where there's no evidence that the email ever made it to the defendant's inbox, let alone that the defendant saw it, opened it, viewed its contents, or did anything to exercise dominion and control over the images that the email contained. So under this court's case law, to prove that Thurman Tanner received the images at issue in count three, the government was required to prove that he knowingly accepted delivery of the images and exercise dominion and control over them. And the facts here totally preclude that finding. First, let me ask you this. My understanding is that your client openly admitted that he regularly received child pornography in this account and forwarded it on to somebody that he claimed he thought was a law enforcement officer. What role should that confessed practice play in our analysis of the point that you are raising? None at all, Your Honor. That would be propensity. That would be saying, okay, we don't know what happened here because the only information we have about this email is that it was found in someone else's sent box. So we don't know if it arrived, we don't know if it was opened, we don't know if he viewed it, anything. We don't know what happened, but we're just going to assume that all these things happened because in some other instance, when he was offered child pornography, he accepted it, he took possession of it, he received it. Do we treat such potentially propensity evidence differently because it's a bench analysis as opposed to a jury? Oh, sorry, I didn't quite hear. So because it's a bench analysis as opposed to a jury analysis? Yeah. I mean, only in the following sense, which is that we wouldn't generally know if a jury had reasoned using propensity inference, right? Because the jury doesn't come out and tell us how it reached its conclusions. There might be some case where you can say it must have been a propensity inference because there's nothing else. Here, you know, the judge does write a long statement of reasons and in that he includes, you know, reference to the other, you know, the admissions as evidence that he must have, Mr. Thurman Tanner must have received, knowingly accepted and received the evidence in this instance. I'm sorry, the images in this instance. So there's that difference, but other than that, no. I mean, we assume that a district judge is going to properly apply the law. It is absolutely clear in American law, I think one of the cases describes it as an underlying premise of our criminal justice system that you can't say because someone did something in a prior instance, they get it here. And again, to here assume that, well, you know, he's the kind of guy who when you send him child pornography, he opens it up, he views it, he will knowingly accept it because that's his character. That's the kind of guy he is. That's just a propensity inference. Mr. Henderson, can I ask you? So you say that we're supposed to assume that the trial court in its ultimate decision only considered relevant evidence. Why could this not have been used by the judge to prove knowledge or identity? Why does it have to be propensity in your opinion? Your Honor, I'm going to sort of just take a step back and say I'm talking, there are two separate claims. One is a sufficiency of the evidence claim. The other is a claim that the court misused the evidence, made a legal error by using propensity evidence. So for the sufficiency of the evidence, you can use this for knowledge, you could use this for identity, but it still doesn't get you anywhere in terms of did the email ever actually hit Thurman Tanner's account? If the email did hit his account, or did it get lost in space? Did he get caught by a spam filter? Did it get bounced back to the sender? If it did hit his inbox, did he do anything to exercise dominion and control over it? And those questions, this just can't help with. For dominion and control, the government would need to show either that he's manually downloading it or if not downloading it, that he's doing something like in the Rome case, where the defendant temporarily saves the images, views them and enlarges them, manipulates them, and in doing so exercises dominion and control. Here, again, the only thing we know about this email, the only reason we know it exists, is that we find it in a sent box of a third party. So there's that evidentiary gap with regard to sufficiency of the evidence. Isn't it reasonable to infer that Mr. Thurman Tanner sought the images charged in count three because he emailed the Ricky T. account first? I don't think you can... Two responses to that. One, I don't think you can infer that he's soliciting this because there's no context. All we know is that he sends... Well, someone using his account sends an email three hours later, this email comes back from the same account. We don't have any phone calls, there's no text in the email saying, hey, here's something for you, send something back to me. There's no history of interactions where one person sends something and the other person sends something back. It's just totally acontextual. For all we know, he was expecting... This was a strange and perverse but friendly gesture, where he's not expecting anything in return, or he's expecting something else in return entirely, and then rejects these images when he gets it. And to that point, I'd say... Just note that the PSR found that there was insufficient evidence that he anticipated receiving something in return for the first email to impose one of the possible sentencing guideline enhancements. So on a lower standard, the PSR came to that conclusion. Even if he did solicit, right? Even if we assume that, okay, he's sending this, he's expecting something in return, solicitation is really just analogous to someone like the defendant in Kaczynski actively searching the internet for child pornography. And the Kaczynski case, that one, that's a defendant who had about 100 downloaded images and then 20,000 images in his internet cache. And the question was, could those images in his internet cache be attributed to him? Could he be considered to have received them? And again, that was in a sentencing context, so that's only by preponderance of the evidence. And this court found, said, no, you can't do that unless there's some evidence of knowingly accepting and exercising dominion and control. So even if you're soliciting images, you're out there seeking things like this, there's still under the law an opportunity to reject the things that are being offered to you. You still, in order to be guilty of receipt, you have to knowingly accept. So if he sends out an email, he gets an email back, we consider that to be a solicitation. Unless he's accepting that email, he is not guilty of receipt. And to the extent that the email ever reached his account, the only evidence would be that it was deleted because it doesn't show up anywhere in Google, it doesn't show up anywhere in his inbox, it's not on his phone, there's no record of it. And so as the agent testified, that means that if it got to his account, he deleted it at some point. Deletion is about the only way there is to reject a proper email. If somebody sends you an email, it shows up in your inbox. If you don't want that email, the only way to not accept it is to delete it. And again, by... But could not the trier of fact also treat the deletion as guilty knowledge, if you will, that he was trying to eliminate something that might be illegal? I think that just becomes speculation. We have no... I mean, so speculation is theorizing about, according to Blacks, theorizing about matters about which there's no certain knowledge. We have no certain knowledge. All we know is it was deleted. We don't know when it was deleted. We don't know how it was deleted. We don't know the circumstances in which it's deleted. So it's observationally equivalent. We're looking at it, and we just don't know, is this something that he saw and, as the government puts it, enjoyed and then deleted? And so there's guilty knowledge he's trying to get rid of the crime, or is this something that shows up in his inbox? And again, assuming that he opened it, assuming that he viewed it, and these are speculative as well, if we get to the point that he views it and he deletes it, that may be him rejecting it. You wanted to save five minutes, so you're just a little under that. Now, it's entirely up to you, but if you want to save that for rebuttal, you may. I'll save most of it. I'm just going to, again, say that I think this point about him deleting it and showing guilty knowledge is, in some sense, beside the point, again, because to get there you have to make so many assumptions about the email arriving at his account, him seeing the email, him opening the email, him scrolling down and seeing the images. There's just no evidence to support any of that. All of that is speculation. So I think it's speculation, too, about what, if he deleted it in the context of having seen the images, what that would mean, but that would be coming on top of a lot of other speculation. And now I have four minutes, and I'll stop. Thank you. Okay, very well. All right, we'll now hear from Mr. Orozco, representing the United States. Good morning, Your Honors. May it please the Court. Agustin Orozco for the United States. I'm going to begin by addressing defendants' arguments with respect to receiving the second email on count three. As the Court noted, this second email was part of a reciprocal exchange with the Ricky T. account holder. The defendant, using his JWOT email account, sent the first email to the Ricky T. account holder. In that email, the defendant notes his intent in the subject line by saying, Picks for you, pending his intent to send 16 images of prepubescent girls to the Ricky T. account holder. And three hours later, the Ricky T. account holder responds in kind by sending six images, again of prepubescent girls, back to the defendant at his JWOT gmail address. Those six images were embedded in the body of the email. They were immediately apparent to the viewer. And the fact that they were embedded shows that they were intended for somebody who intended to receive this email. Now, the defendant makes a big deal about the defendant not downloading these images and them not appearing on his phone. That is not conclusive. As this Court held in Rom that the defendant there sought out the images by going on websites, and even though these images were downloaded automatically to his cash account, the defendant had access to that cash account and in fact deleted those images, showing that he had dominion and control over those images. The same is true here. The simple fact that the email went to the defendant's email account, the fact that he called it for his collection, the fact that he deleted it afterwards, as this Court points out, shows consciousness of guilt. The defendant only had to have it for a matter of seconds in order to have dominion and control over it in his account, in order to enjoy those, and as the Court holds in Rom, he had the ability to email, to save, to print all those images when it was in his email account. How does the government respond to the defense's contention that deleting these images was the only thing he could have done if he received them and wanted to get rid of them? Your Honor, the inference is drawn from the circumstantial evidence in this case. The defendant wanted to receive these emails, and he engaged in the reciprocal exchange in order to receive these emails. He told law enforcement during a recorded interview in this case that he's attracted to underage girls. He told law enforcement in this case that he used this same Gmail account to save images of child pornography in a folder called Pics. The fact that the defendant deleted the emails afterwards is not dispositive. He intended to receive this email. This email went to his account. The defendant used this email to save his collection of child pornography. The fact that he deleted them was not dispositive. In fact, the defendant said in that same recorded interview with law enforcement that the name Ricky T. rang a bell, inferring that he knew about the Ricky T. account holder, and that's at ER-418. In addition, when law enforcement brought up a child pornographer in Florida referring to Benjamin Cordaro, the user of the Ricky T. account, the defendant noted, oh, you must be talking about my kick, and that's at ER-378. And at ER-449, the agent testified that Cordaro was also exchanging child pornography via kick, as the defendant said he was doing as well. He was doing the same recorded interview at ER-394 and 95. The defendant tells law enforcement that he found a shortcut to sending out child pornography from his email address by simply clicking on an image and then forwarding it on using his kick application on his phone. The defendant wants to analogize this case to cases where images are saved in the cache folder. That's simply not the case here. Kuczynski is different from what happened here. In Kuczynski, he visited websites, and these images were downloaded automatically to his cache folder, and the evidence there demonstrated that the defendant just simply wasn't sophisticated enough to access the images in his cache folder. The evidence presented was that it's difficult to access images in the cache folder, and so the court held that he just didn't have dominion and control over those images. Telling is that in that same case, Kuczynski didn't contest child pornography images found in his deleted files folder. So even though he had deleted images and then went to his deleted files folder, those weren't even contested in that same case. That is not what's happening here. The images went to his email account. The evidence demonstrates that this was the defendant's account by the subscriber records at 496, and that he admitted that it was an account at ER 371 and 73. So as soon as it hit his account, he had dominion and control over those images. Counsel, I want to ask you, this is perhaps a little off, but I want to explore the circumstantial evidence that the government might be reliant upon in part. When Tanner contacted Giselle and tried to get her to meet him at the Starbucks, he asked her not to tell anybody that she was going to have sex with him because he could, in quotes, get sent to prison for this, in quotes. Does the fact that he was aware of at least the laws related to having sex with minors have any relevance to his understanding of law about child pornography images? I think it is telling, Your Honor. I think the defendant here noted that he had a sexual attraction to underage girls, and so he was familiar with seeking out their images using his Gmail account, and the fact that he noted that he knew it was illegal to have sex with underage girls shows his knowledge that he wasn't supposed to have these images, and thus leading to the imprint that by deleting these emails, it shows consciousness of guilt in not wanting to have them in his email account. Actually, I have a question. I know the defendant testified that it was his practice when he received these pictures to save it in his email account in a folder. Was there any evidence about his practice of deleting emails once he received them? There was no direct evidence of how he treated deleted emails, Your Honor, other than the fact that this email wasn't found in his Google account. The rest of the evidence showed that this account was used to save child pornography and to send child pornography to others. When you subpoenaed his account, did you have access to an entire email account or just certain correspondence? There was a search warrant, Your Honor, and so it was in a search warrant to Google, and the Google produced what was in his account at the time two years later. Was there any evidence in the record about emails still being in the inbox containing the pictures in addition to the pictures being in the saved folder? Yes. In fact, Your Honor, during trial, the defense tried to elicit testimony from Agent Kirkham that there were no emails containing child pornography in the two preceding years from the emails in counts 2 and 3. And he tried to elicit testimony that there weren't any emails in that inbox in 2013 and 2014, and in rebuttal, the government entered into evidence two different emails, one in 2013 and one in 2014, where a defendant saved child pornography in a draft email and another one where he sent child pornography to another individual using that same JWAT 9401. If there are no further questions on that issue, I'll move on to the district court. I'll move on to the district court's use of propensity evidence. The record demonstrates that the district court properly relied on defendant statements under appropriate use of 404B in this case. As Judge Smith pointed out, we give deference to juries in jury trials that they appropriately use 404B evidence. We should give that same deference to an experienced district court judge during a bench trial. Hardrick is instructive on this issue. In Hardrick, the defendant raised a similar defense to one defendant raised at trial here. There, the defendant argued that the images found on his computers were either downloaded accidentally or that they were downloaded by somebody else. In that case, this court held that the district court properly admitted 404B evidence in order to rebut that defense. That is exactly what the district court did here. If you look at the district court's order in context at ER 11, specifically paragraph 68 through 73, it's clear that the district court intended to use this statement by the defendant only to rebut defendant's defense. From paragraph 68 to 71, the district court lays out all the evidence demonstrating defendant's guilt with respect to counts 2 and 3. It lays out the fact that defendant controlled the account, that the images were clearly child pornography, and then the inference is drawn from those emails, specifically the fact that in the second email in count 3, the images were embedded in the email and so would have been immediately apparent to the reader. And the inference drawn from that, of course, is that it was sent to somebody who intended to receive the images. Then in paragraph 72, the court raises defendant's defense. It says that defendant lost his phone, and the court boots that down by noting that there simply isn't any evidence in the record. And then in paragraph 73, the paragraph at issue here, the court says in addition. So by saying in addition, he's noting that there's additional evidence demonstrating that that defense is not credible. And then the court goes on to say defendant admitted to receiving, sending, and storing child pornography in other instances. So by looking at the entire order in context, it's clear that this report simply raised those statements as a rebuttal to defendant's defense that he had lost his phone and that somebody else was using it, other than the fact, of course, that the inference is drawn, even at trial and more specifically, even more so on appeal, or that such defense is very plausible. If there are no further questions. Do either of my colleagues have additional questions for the government? No. I think not. Do you have additional comments, or are you all set? The government submits and yields its time. Thank you, Your Honor. Very well. Thank you. So, counsel, you have some rebuttal time. Sorry. I thought I muted myself. Thank you. I want to start just by responding to Judge Lee's question about emails in the account and what was found on Google. I'm not sure if it's clear or not, but just to be completely clear, there are different emails floating around, but the specific email, that is the email at issue in count three, was not found in the Google discovery. It wasn't found anywhere except for in this third-party Ricky T. sent box. So, again, that's why I'm saying there's just no evidence of it ever landing in Thurman Tanner's account, that it was open, that it was viewed, et cetera. Then just running down some of the points about it. I'm sorry. Go ahead. I just want to get a clarification here. This case is a little unusual to me anyway, in that your client had an extensive interview with law enforcement after waiving his Miranda rights, in which he, from my perspective, seemed to detail a regular practice of reviewing materials of the nature that we're talking about and even discussed, you know, sending what he thought were materials to law enforcement and so on. Having opened that door, wasn't the court entitled to draw, if you will, common-sense inferences from what he said in that interview? No, Your Honor. Not the inference. I mean, he doesn't make any blanket statements. He doesn't say, I did this with every email I received. So he's saying, in other instances, I've received emails and I've received, you know, I've done enough to receive the images. But to say that that's what he did in this particular instance is a propensity inference. It might be common sense. But as Judge Partone pointed out, it can also be identity and other things instead of propensity. For example, you would not say, if we were interviewing you, you wouldn't say, well, you know, I frequently get these porn images and I send them on to law enforcement. I mean, most people do that. So here you have somebody that readily admits that, discusses it as if he were, you know, having a little breakfast conversation with him. Why can't the district judge take that into account, showing his method of operation, if you will? So the district judge can take it into account. I mean, method of operation, like modus operandi, that also just goes to identity. This court's case law says you can use MO evidence just to show that you're  So you can use this to get to identity. But that doesn't solve the actual elements of the offense, which are knowing acceptance and exercising dominion and control. If the judge decided to use it for identity, okay. Well, you know, let's just say there are no problems with that. It's still not going to deal with, well, did he ever get it? If he got it, did he open it up? This sort of saying that, well, because he has the character or he's the kind of person who would, if he received child pornography, an email that seemed to contain child pornography, open it, look at it, enjoy it, whatever, that is propensity evidence. Mr. Henderson, can I ask a question? Because isn't the concern here that in order to be guilty of this, this count that he had to have, there had to show some sort of tangible material in his possession? And so in other cases, the images were possessed on computer disks or some other, on the phone itself. But in this case, there's, the concern might be that there's no proof that he actually had tangible, he had possession of a tangible item. Is that what you're saying here? That's another point. But, I mean, I'm also saying that this gets sent to him. And he has to accept it, right? That is the rule. He has to possess it, and he has to possess it somewhere, right? And he has to possess it somewhere. And if what's happening is it's just either he's not looking at it and it's getting deleted immediately, he's not accepting, he's not taking possession of it. It's not just that he has to possess it, he has to take possession of it. Well, but didn't the judge try to address the issue of looking at it by saying this item was clearly visible to him? And so by clearly visible, he was saying he had to have seen it, he had to have taken possession. My bigger concern is, is there any, under this count, is there any proof that they were actually possessed? Because there was no tangible item here, was there? There was no tangible item here. The only place this is tangibly possessed is back, well, the only place this is possessed at all is back in Ricky T's account. So, you know, when police arrest Mr. Tanner, he lets them search everything, he gives them all his passwords, he gives them access to his basket containing all his worldly goods. They don't, this isn't anywhere. So it's not there tangibly, and that is another point. Okay, we've gone over time, but let me ask my colleague if either has additional questions for defense counsel. I don't. Judge Lee, anything further? Okay. All right, well, we thank both counsel for your arguments. It's been very helpful. The case just argued is submitted, and the court stands in recess for the day.
judges: M. Smith, Cardone, Lee